RECORD NO. 15-1261
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

CHARITY CHIDINMA EMERONYE SWIFT,

Plaintiff-Appellant,

v.

FRONTIER AIRLINES, INC.
and
JANE DOE,

Defendants-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA
_____

OPENING BRIEF OF PLAINTIFF–APPELLANT

_____

Charity Chidinma Emeronye Swift
Swift & Swift, Attorneys at Law, P.L.L.C.
2121 Eisenhower Avenue, Suite 200
Alexandria, Virginia 22314-4688
Telephone: (703) 418-0000
Facsimile: (703) 535-8205
E-Mail: charity@swift.law.pro

Stephen Christopher Swift
Swift & Swift, Attorneys at Law, P.L.L.C.
2121 Eisenhower Avenue, Suite 200
Alexandria, Virginia 22314-4688
Telephone: (703) 418-0000
Facsimile: (703) 535-820
E-Mail: steve@swift.law.pro

*Counsel for Plaintiff-Appellant*
*Charity Chidinma Emeronye Swift*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____        Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO

2.      Does party/amicus have any parent corporations?                                YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?        YES     NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)     YES     NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                      YES     NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

****************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                    _____
         (signature)                                            (date)

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES**                                    **i**

**STATEMENT OF JURISDICTION**                               **1**

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**            **1**

**STATEMENT OF THE CASE**                                   **2**

**STATEMENT OF THE FACTS**                                  **6**

**SUMMARY OF ARGUMENT**                                     **10**

**ARGUMENT**                                                **14**

**STANDARD OF REVIEW**                                      **14**

**(A) THE DISTRICT COURT ERRED IN NOT APPLYING
CONTRACT LAW PRINCIPLES IN REACHING ITS DECISION**          **16**

**(i) THE PARTIES DID NOT REACH A COMPLETE SETTLEMENT
AGREEMENT BECAUSE SIGNING THE RELEASE WAS
A CONDITION PRECEDENT TO A BINDING AGREEMENT**              **17**

**(ii) THE DISTRICT COURT ERRED IN HOLDING THAT THERE WAS A
MEETING OF THE MINDS, BECAUSE IN FACT, THERE WAS NO SUCH
MEETING OF THE MINDS AND AS SUCH THERE CANNOT BE A
BINDING SETTLEMENT AGREEMENT**                              **19**

**(iii) IT HAS AUTHORITY TO ENFORCE A DRAFT UNSIGNED
SETTLEMENT AGREEMENT BECAUSE THERE
WAS NO SETTLEMENT AGREEMENT**                               **26**

**(B) THE DISTRICT COURT ERRED IN CONCLUDING THAT
THERE WERE NO MATERIAL FACTS IN DISPUTE
TO PRECLUDE SUMMARY JUDGMENT**                              **27**

**Page**

**(C) IT WAS ABUSE OF COURT'S DISCRETION IN NOT CONSIDERING UNFAIRNESS, BAD FAITH AND UNCONSCIONABILITY  IN SECURING A COUNTER OFFER OF $15,000, AS CLAIMED IN MRS. SWIFT'S AFFIDAVIT**          **31**

**(D) COMPELLING PLAINTIFF-APPELLANT TO SIGN RELEASE THAT WOULD SUBJECT HER TO PERJURY**          **34**

**CONCLUSION**          **34**

**REQUEST FOR ORAL ARGUMENT**          **35**

**CERTIFICATE OF COMPLIANCE**

**CERTIFICATE OF SERVICE**

<u>**TABLE OF AUTHORITIES**</u>

<u>**Pages**</u>

<u>**CASES**</u>

*Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608,
26 L.Ed.2d 142 (1970)                                                                    15, 28

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986)              14

*Atlantic Coast Realty Co. v. Robertson's Exr'r.*,
135 Va. 247, 116, S.E. 476 (1923)                                                   18

*Atl. Realty Co. v. Robertson's Ex'r*, 135 Va. 247, 253-54,
116 S.E. 476 (1923)                                                                     17, 23

*Atlantic States Construction Co. v. Robert E. Lee Co.*,
406 F.2d 827, 829 (4th Cir. 1969)                                                   15

*Barham v. Am. Med. Link, Inc.*,
2010 U.S.Dist. LEXIS 118117, at *5-8 (E.D. Va 2010)                        16

*Byrum v. Bear Inv. Co.*, 936 F.2d 173, 175 (4th Cir. 1991)                16

*Cameron Jibril Thomaz, v. It's My Party, Inc., dba I.M.P., Inc.*, et al.,
2013WL 1450803 (E.D.Va)                                                            19

*Charbonnages de France v. Smith*, 597 F.2d 406 (1979)              15, 24, 27

*Cole v. Cole,* 633 F.2d 1083, 1089 (4th Cir. 1980)                            15

*Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33 (5th Cir. 1967)  29

*Coleson v. Inspector General of Dept. of Defense,*
721 F. Supp. 763 (E.D. Va. 1989)                                                   16

*Columbus-Am. Discovery Group v. Atlantic Mutual Ins. Co.*,
203 F.3d 291 (4th Cir. 1999)                                                          27

*Corbett v. Bonney*, 202 Va. 933, 938, 121 S.E.2d 476 (1961)              26

**Pages**

*Cram v. Sun Insurance Office, Ltd*., 375 F.2d 670, 674 (4th Cir. 1967)    25

*Derby v. Derby*, 378 S.E.2d 74 (1989)    31

*Gerald T. Dixon, Jr., L.L.C. v. Hassell & Folkes, P.C*.,
285 Va. 456, 723 S.E.2d 383 (2012)    18

*Golding v. Floyd*, 261 Va. 190, 539 S.E.2d 735 (2001)    17, 23

*Green's Exr's v. Smith*, 146 Va. 442, 452 (1926)    20
*Grubb & Ellis Co. v. Potomac Medical Building LLC,*
2009 U.S. Dist. LEXIS 93471, 2009 WL 2057364 (E.D. Va. 2009)    23

*Hensley v. Alcon Labs.*, Inc., 277 F.3d 535, 540 (4th Cir. 2002)    26

*Hill v. Lockheed Martin Logistics Mgmt., Inc.,*
354 F.3d 277, 284 (4th Cir. 2004) (*en banc*)    14

*Hooters of America v. Phillips*, 173 F.3d 933, 938 (4th Cir.1999)    32. 33

*Hogue v. Pellerin Laundry Mach. Sales Co*.,
353 F.2d 772, 774 (8th Cir.1965)    32

*Hwerz Corp v. Zurich American Ins. Co*.,
496 F.Supp.2d 668, 676 (E.D.Va. 2007)    19

*Intersections, Inc.v. Loomis,*
 No. 1:09-cv-597 (LMB/TCB).2010 WL 4623877 (E.D. Va.)    16, 17, 22

*Kukla v. National Distillers Products Co*., 483 F.2d 619 (6th Cir. 1973)    29, 30

*Lacey v. Cardwell*, 216 Va. 212, 223, 217 S.E.2d 835 (1975)    20

*Massachusetts Casualty Ins. Co. v. Forman,* 469 F.2d 259 (5th Cir. 1972)    30

*McKay Consulting Inc., v. Rockingham Hosp*., 452, Fed Appx. 331 (2011)    25

*Moorman v. Blackstock, Inc*., 276 Va. 64, 661 S.E.2d 404, 409 (2008)    25

**Pages**

*Millner v. Norfolk & W. Ry. Co.*, 528 F.2d 423, 425 (4th Cir. 1975)     26, 29

*Morrison v. Nissan Motor Co., Ltd.*,
*365365601 F.2d 139, 141 (4th Cir. 1979)     15

*Napier v. Chesapeake & Ohio R.R.*, 582 F.2d 1344 (4th Cir. 1978)     30

*Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir.1983)     26, 27

*Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 (4th Cir. 1990)     14

*Persinger & Co. v. Larrowe*, 252 Va. 404, 477 S.E.2d 506, 509 (1996)     25

*Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va.2007)     20

*Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.*,
381 F.2d 245, 249 (4th Cir. 1967)     28

*Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir. 1951)     27, 28

*Player v. Chandler,* 299 S.C. 101, 382 S.E.2d 891, 893 (1989)     20

*Poller v. Columbia Broadcasting System*, Inc., 368 U.S. 464, 473,
82 S.Ct. 486, 491,7 L.Ed.2d 458 (1962)     15

Power Servs., Inc. v. MCI Constructors, Inc.,
3 Fed. Appx. 190 (4th Cir. 2001)     16

*Rogers v. Salisbury Brick Corp.*, 299 S.C. 141, 382 S.E.2d 915, 917 (1989)   32

*Ross v. Communications Satellite Corp.* 759 F.2d 355, 364 (4th Cir.), (1985)   14

*336 Smith v. Farrell*, 199 Va. 121, 98 S.E.2d 3, 7 (1957)     25

*Sengal v. Fakouri Elec. Eng'g, Inc.* (E.D. Va. 2011)     26

*Snyder-Falkinham v. Stockburger*, 249 Va. 376, 379 457,
S.E.2d 36 (Va. 1995)     19

*Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir. 1950)     27

iii

**Pages**

*T-Mobile Ne. LLC v. City Council of Newport News*,
674 F.3d 380, 384-85 (4th Cir. 2012)                                      14

Thompson v. Everett, Inc. v. Nat'l Cable Adver., LP,
57 F.3d 1317, 1323 (4th Cir. 1995)                                      16

*United States v. Diebold*, 369 U.S. 654, 655,
 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)                                  15, 28

*Wells v. Weston*, 229 Va. 72, 77, 326 S.E.2d 672, 675-76 (1985)         31

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*,
156 F.3d 535, 542 (4th Cir.1998)                                         33

*White v. United States Department of Interior*,
639 F.Supp. 82, 86 (M.D.Pa.1986) ), aff'd, 815 F.2d 697 (3d Cir. 1987)   16

*Wood. v. Virginia Hauling Co*., 528 F.2d 423, 426 (4th Cir. 1975)     27, 29, 30

## STATUTES

42 U.S.C. §1981                                                          2

Title VI of the Civil Rights Act of 1964 (U.S.C. § 2000D)               2

## OTHER AUTHORITIES

Black's Law Dictionary 284 (5th ed. 1979)                               32

FED. R. CIV. P. 56                                                       14, 15, 29

Louis, Federal Summary Judgment Doctrine: A Critical Analysis,
83 Yale L.J. 745, 748-49 n.19 (1974)                                     28

Pomeroy, Equity Jurisprudence § 928 (5th ed. 1941)                       32

Restatement (Second) of Contracts                                       24, 33

Williston on Contracts § 1467 (rev. ed.)                                32

10 Wright & Miller, Federal Practice and Procedure:
Civil s 2713, at 406-10, s 2716, at 431-32                    28

## STATEMENT OF JURISDICTION

The District Court dismissed the civil action of Plaintiff Charity Chidinma Emeronye Swift ("Mrs. Swift") against Defendants Frontier Airlines, Inc. ("Frontier Airlines") and Jane Doe (an unknown employee of Frontier Airlines) and entered final judgment on February 20, 2015. Notice of Appeal was filed on March 5, 2015. This Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

A. Whether the District Court erred in not applying contract law principles in holding that:

(i.) the parties have reached a binding, complete settlement agreement?

(ii) there was, in fact, a meeting of the minds of the parties?

(ii) it has authority to enforce a draft unsigned settlement agreement?

B. Whether the District Court erred in concluding that there were no material facts in dispute, hence, its summary decision?

C. Whether the District Court abused its discretion in not considering pertinent factual assertions in Mrs. Swift's Affidavit?

D. Whether the District Court can force/compel Mrs. Swift to sign the proposed Release drafted by Defendants and subject her to perjury?

## <u>STATEMENT OF THE CASE</u>

Complaint was filed in the United States District Court for the Eastern District of Virginia, Alexandria Division, on September 4, 2014.  An Amended Complaint, claiming discrimination in violation of 42 U.S.C. §1981; discrimination in violation of Title VI of the Civil Rights Act of 1964 (U.S.C. § 2000D); and breach of contract, was filed on January 14, 2015.  See Joint Appendix ("JA") page 51.

Plaintiff-Appellant's action arose from the discrimination and hostile treatment Frontier Airlines' boarding agent, Jane Doe, gave Mrs. Swift when she attempted to board her last flight home from Denver to  Reagan National Airport on September 4, 2013.  JA 51

This appeal is from the District Court's judgment granting Frontier Airlines' motion to enforce and alleged settlement between the parties, and the dismissal of Mrs. Swift's underlying discrimination and breach of contract case.  JA 210 Defendant-Appellee's Motion was granted and Plaintiff-Appellant's underlying discrimination and breach of contract case were summarily dismissed on the ground "that the parties reached a binding, complete settlement agreement."   JA 208

The lower court summarily dismissed Plaintiff-Appellant's case, despite the fact that Mrs. Swift raised several factual issues in her Affidavit JA 156 and in her arguments, including that there was no meeting of the minds between the parties. JA 151

Defendant-Appellee Frontier Airlines, Inc. is an Airline that operates in Arlington County, Virginia, at Ronald Reagan Washington National Airport JA 55, and has been a recipient of federal financial assistance / funding after the September 11, 2001 terrorist attacks.  JA 73  Mrs. Swift is a private citizen who was discriminatorily charged $25.00 for her carry-on luggage and prevented from boarding her flight by Frontier Airlines' agent Jane Doe, unless she paid the fee JA 62, even though according to Mrs. Swift's air ticket, and Frontier Airlines' own carry-on policy at the time, she did not have to pay for her carry-on.  JA 88-120

Frontier Airline's agent discriminated against Mrs. Swift (a Black woman and the only black person on the entire flight) and prevented her from boarding, while her husband (a Caucasian male) was allowed to board, even though both were similarly situated in all respects except in their race.

After being served, Frontier Airlines filed its motion to dismiss.    It challenged the intentional infliction of emotional distress and defamation claims in

Mrs. Swift's original complaint. The District Court granted its motion and dismissed Mrs. Swift's tort claims.

On December 10, 2014, Mrs. Swift filed a motion for leave to amend her Complaint.  JA 7  The proposed Amended Complaint included additional counts of breach of contract and false imprisonment.

On December 23, 2014, Frontier Airlines' filed its opposition to Plaintiff's motion for leave of court to amend. JA 14  Hearing was set and heard on January 9, 2015, before Magistrate Judge Ivan D. Davis. JA 185 Judge Davis partly granted Plaintiff's motion to amend regarding her breach of contract claim and partly denied her motion to amend regarding her false imprisonment claim.  JA 50

After the hearing, the parties immediately met at Frontier Airlines' local counsel's office near the courthouse on Frontier Airlines' counsel's request. A very brief settlement discussion took place. All that transpired was that Frontier Airlines' counsel, Ms. Wegman, made Mrs. Swift an offer of $7,500, which she wrote on her writing pad, and pushed it forward across the conference table directly to Mrs. Swift, who was sitting opposite to her.  JA 156

Mrs. Swift then made a counter offer of $15,000, which Ms. Wegman speedily accepted. Ms. Wegman then asked Mrs. Swift if there was anything she wanted to add. Mrs. Swift answered yes, that she would also like an apology from

an officer of Frontier Airlines. Ms. Wegman angrily said that no such apology was going to be made unless it was her personal apology. There was an awkward silence, and then Ms. Wegman said, "I will then prepare a release on behalf of Frontier Airlines, and as soon as you sign it, we will send you a check." Mrs. Swift responded, we'll see! Nothing further was said or discussed by the parties regarding terms of the settlement or the release and the parties departed.  JA 156

Ms. Wegman e-mailed the release to Mr. Swift. When Mrs. Swift reviewed it, she refused to sign it. Ms. Wegman, obviously angry, expressed that anger to Mrs. Swift and her husband. Ms. Wegman called Mr. Swift and wrote him, demanding that he ask his wife to sign the release and threatened legal action and to make Mrs. Swift pay for her (Ms. Wegman) fees, if Mrs. Swift did sign it.   JA 156

Defendant-Appellant's filed their motion to enforce, and asked the District Court to enforce what they called a complete and enforceable settlement agreement.  JA 121  At the hearing that followed on February 20, 2015, District Court Judge Anthony J. Trenga ruled in their favor, finding that that there was a complete and enforceable settlement agreement.   JA 208  Mrs. Swift disagrees with the lower court's ruling. Mrs. Swift claims she did not reach any binding agreement with Frontier Airlines, because there was no meeting of the minds, and for other reasons argued below. Mrs. Swift appeals the summary dismissal of her

case, the holding that there was no material fact in dispute, the ruling that her

arguments have no merit and the Court's failure to consider pertinent facts claimed

in her affidavit, as error and abuse of discretion.  JA 211

Plaintiff-Appellant's full factual detailed account of the discussions on

January 9, 2015 is in Mrs. Swift's Affidavit, attached hereto at JA 156

## STATEMENT OF THE FACTS

On August 19, 2013, Plaintiff and her husband booked two-way return

flights, through their travel agent, Air World Travel, from Ronald Reagan

Washington National Airport, in Arlington, Virginia, ("Reagan Airport") to

Bozeman Airport, in Bozeman, Montana ("Bozeman"), and back to Reagan

Airport. The flight from Reagan Airport to Bozeman Airport was on United

Airlines. The flight from Bozeman Airport to Reagan Airport, was on Frontier

Airlines. There was a stopover at Denver Airport with both flights.  JA 59

Plaintiff and her husband had a total of two pieces of luggage -- one carry-on

luggage each. They were told by their booking agent that carry-ons were free. This

was confirmed when they arrived at the Reagan National, by United Airlines,

which did not charge them for their two carry-ons. The trip on United Airlines

from Reagan Airport to Bozeman Airport was without hassle.  JA 59-60

On their return day, September 4, 2013, Plaintiff-Appellant and her husband went to Frontier Airlines' counter and checked in for their Bozeman to Denver flight. They checked in and were given their boarding passes. Mrs. Swift and her husband were not charged for their carry-ons. Their trip from Bozeman to Denver was without hassle. JA 60

Arriving Denver Airport, Mrs. Swift and her husband, check in for their final flight home to Reagan National Airport. They went to Frontier Airlines' counter and were checked in. They were given their boarding passes without being charged for their carry-ons. However, at the boarding gate, Plaintiff-Appellant was singled out, by Jane Doe, to pay for her carry-on while her husband was allowed to board without paying for his own carry-on. JA 61

When Mrs. Swift refused to pay until Frontier Airline's agent, Jane Doe, explained to her why she was singled out to pay for her carry-on, Jane Doe called for the airport security police to arrest Mrs. Swift. Terrified, embarrassed and humiliated, Mrs. Swift was forced to pay out of fear that the police would arrest her for nothing. After paying, she was allowed to board, so she and her husband boarded the flight. JA 64-65

The incident on September 4, 2013, is the underlying case that the parties were attempting to settle on January 9, 2015. In her Affidavit, submitted to the

7

District Court before the hearing, attached hereto, at JA 156 Mrs. Swift gives a full factual account of what transpired during the parties' settlement discussions.

Prior to the settlement discussions on January 9, 2015, Plaintiff-Appellant had two prior separate settlement discussions with Defendant-Appellee's counsel Ms. Wegman. The first was initiated by Ms. Wegman (as was the one on January 9, 2015), immediately after Mrs. Swift filed her action and prior to Defendant's filing their motion to dismiss her initial complaint. Then, Plaintiff-Appellant had told Ms. Wegman that she would not accept $50,000 as settlement of her case. Defendant-Appellee obviously did not want to settle at that time, because the next thing they did, was file their motion to dismiss.

The second settlement discussion was as a result of the fact that the first discussion did not result in settlement. Mrs. Swift engaged attorney Douglas Coleman to see if he could settle the case. Mrs. Swift had made clear then, that she would not settle for less than $75,000. Again, no settlement resulted.  JA 160

During the discussion on January 9, 2015, Ms. Wegman told Mrs. Swift, that Frontier would not settle for more than $7,500, that Mrs. Swift should not even attempt to think of anything in the range of $10,000, or $15,000 because there was no way that was going to happen, because the way they see it, was to calculate how much it will cost them to make a motion, and if it was going to cost them less, they

won't settle for an amount more than that, and that litigation is was what she does, and that she was ready to go to trial if Mrs. Swift did not settle.   JA 162

Ms. Wegman informed Mrs. Swift that she had no authority to offer anything up to $15,000 and did not see how Frontier would go beyond $7,500. So, she offered Mrs. Swift $7,500, which she wrote on her pad and pushed it over across to Mrs. Swift, who sat directly opposite to her at the conference table, to which Mrs. Swift then made a counter offer of $15,000, which she speedily accepted.  JA 162-163

These exchanges took place just after Mrs. Swift had explained to Ms. Wegman that she had been emotionally drained by the incident that precipitated her action against Frontier Airlines, and would like the whole matter to go away if she could, because each time she thought about it or discussed it, as she was doing then, she gets so emotional that she wanted to cry. She also told Ms. Wegman, that she did not like dragging her husband further in the whole matter, to which Ms. Wegman encouragingly enthused: "think also that you will have to go to Denver, for deposition of Defendant's witnesses and this will cost you time, and money and a lot of hassle."

During, and at the conclusion of the discussions, **<u>no one</u>**, including Defendant-Appellee's counsel, Ms. Wegman, expressed or implied any intention to

leave that discussion and claim that the parties had concluded a settlement agreement, without an executed release. And the parties **never** discussed, agreed or contemplated that the underlying case will be dismissed, prior to a complete and executed settlement agreement.  JA 164

Defendant-Appellee's counsel, Ms. Wegman, never asked, and Mrs. Swift **never** promised Defendant-Appellee's or Ms. Wegman, that she would sign **any release** she sends her, no matter its contents, during or after the discussions on January 9, 2015. No discussions whatsoever took place as to what the content of the release should or would be, and it was humanly impossible for Mrs. Swift to have known, without any such discussion, what the contents or terms of Ms. Wegman's draft release would be, until she sees it, And it would be unfair and unconscionable to hold that Mrs. Swift had given her complete and prior agreement to it irrespective of its content.  JA 165-166

## SUMMARY OF ARGUMENT

Mrs. Swift believes the District Court failed to apply general contract principles in its analysis, before arriving at its decision. As a consequence, it erroneously dismissed her case, based on the rulings it made JA 203-208 and as presented above, as **ISSUES PRESENTED FOR REVIEW**.

Mrs. Swift claims that she is entitled to reversal of the District Court's judgment because the District Court completely misapplied the law. In ruling that there was a settlement agreement that had nothing to do with the release, in effect, ignoring the fact that Mrs. Swift signing the release was consideration and a condition precedent to Frontier Airlines paying her $15,000.

Mrs. Swift claims that she is entitled to reversal of the District Court's judgment because the District Judge misapplied the law and erred in holding that the parties have reached a binding, complete settlement agreement, ignoring broad Virginia case laws that hold that there can be no agreement or contract where there is no meeting of the minds.

The lower court erred in ignoring settled Virginia law and principles of contract law that no contract can exist where one party secretly puts terms into a release that the other party does not know of, discuss or agree to. The lower court erred in holding that it has authority to enforce a draft unsigned settlement agreement. The court ignored settled Virginia law that holds that the District Court's authority to enforce settlement agreements is limited to only where the parties have reached a complete settlement agreement, because the Court is not an arbiter of private settlement discussions.

Mrs. Swift claims that she is entitled to reversal of the District Court's judgment because the District Judge erroneously concluded that there were no material facts in dispute precluding him from summarily dismissing Mrs. Swift's case, despite many material factual differences in the parties affidavits, and *a fortiori*, the parties' material dispute about the existence of a settlement agreement and the contents of the release.

In her Affidavit JA 132, Ms. Wegman left out or added certain facts, for some unknown reasons. For example, in her Affidavit, Ms. Wegman conveniently stated that "Near the end of those two hours, Plaintiff and her counsel provided a settlement demand. Specifically, they advised Attorney Wegman that Plaintiff would dismiss her claims against Frontier in their entirety in exchange for a certain monetary figure," but left out (1) that Plaintiff's husband **never** uttered any word to her regarding settlement during the so-called settlement discussions that lasted 10-15 minutes at the most, as he was not part of the discussion because he had no authority from Mrs. Swift to discuss settlement on her behalf; (2) that she, Ms. Wegman, first made Plaintiff an offer of $7,500, and that Plaintiff's offer of $15,000, was **in fact**, a counter offer to her offer; and (3) that she was the initiator and moderator during the entire discussion including the very little discussion about settling the case, and that she directly told Mrs. Swift that "Frontier would

12

pay her $7,500 for Mrs. Swift to agree to sign a release and settle her case and against Frontier".

Plaintiff-Appellant and her husband were in the conference room with Ms. Wegman for no more than an hour and fifteen minutes. Defendant-Appellee's counsel failed to explain to the District Court the exact nature of the discussions/terms she discussed. What, are the terms discussed prior to and "near the end of those two hours" as Ms. Wegman claims in her Affidavit?

Defendant-Appellee's counsel and the District Court confused and conflicted the sequence of the discussions regarding the issue of apology and incorrectly said that the apology was discussed after the parties had concluded their agreement; again, ignoring Mrs. Swift's Affidavit account and sequence of events. In the first place, it was Ms. Wegman herself, who asked Mrs. Swift the question "do you have anything further that you would like to add", immediately after the $15,000 counter offer, which prompted Mrs. Swift, to answer yes, that she would in addition, want an official apology from Frontier Airlines. If Ms. Wegman believed that the agreement had been concluded, why ask Mrs. Swift if she had anything further to add?

Mrs. Swift claims that she is entitled to reversal of the District Court's judgment because, with due respect, the District Judge abused his discretion by

13

ignoring Mrs. Swift's assertions in her Affidavit, including but not limited to her claim that Frontier Airlines' counsel Ms. Wegman unfairly, in bad faith and unconscionably, took advantage of her emotional state of mind, during the discussions, in securing a counter offer of $15,000.

## ARGUMENT

## STANDARD OF REVIEW

The Court reviews a grant of summary judgment de novo on appeal, applying the same standard as the trial court without deference to the trial court. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 (4th Cir. 1990); *T-Mobile Ne. LLC v. City Council of Newport News*, 674 F.3d 380, 384-85 (4th Cir. 2012).

Summary judgment is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 284 (4th Cir. 2004) (*en banc*).

The burden is on defendant, as the moving party, to demonstrate the absence of any genuine issue of material fact. *Ross v. Communications Satellite Corp.* 759

F.2d 355, 364 (4th Cir.), (1985), citing *Adickes v. S.H. Kress Co*., 398 U.S. 144,

157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).  In determining whether

summary judgment should be granted in *Ross,* the United States Court of Appeals

for the Fourth Circuit, said:

> "The facts themselves, and the inferences to be drawn from the underlying
> facts, must be viewed in the light most favorable to plaintiff, as the party
> opposing the motion. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct.
> 993, 994, 8 L.Ed.2d 176 (1962); *Poller v. Columbia Broadcasting System*,
> Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491,7 L.Ed.2d 458 (1962). Only
> where it is "perfectly clear that there are no issues in the case" is summary
> judgment proper...The nonmoving party is in a favorable posture, being
> entitled "to have the credibility of his evidence as forecast assumed, his
> version of all that is in dispute accepted, all internal conflicts in it resolved
> favorably to him, the most favorable of possible alternative inferences from
> it drawn in his behalf; and finally, to be given the benefit of all favorable
> legal theories invoked by the evidence as considered." Charbonnages, 597
> F.2d at 414."

> "In determining whether summary judgment may be granted, the district
> court must perform a dual inquiry into the genuineness and materiality of
> any purported factual issues. Whether an issue is genuine calls for an
> examination of the entire record then before the court in the form of
> pleadings, depositions, answers to interrogatories, admissions on file and
> affidavits, under Rule 56(c) and (e). Genuineness means that the evidence
> must create fair doubt. A trial, exists to resolve what reasonable minds
> would recognize as real factual disputes. *See Cole v. Cole,* 633 F.2d 1083,
> 1089 (4th Cir. 1980); *Atlantic States Construction Co. v. Robert E. Lee Co*.,
> 406 F.2d 827, 829 (4th Cir. 1969). Care is required in deciding whether the
> evidence presents a genuine issue of motive, for "summary judgment is
> seldom appropriate in cases where particular states of mind are decisive as
> elements of [a] claim or defense." Charbonnages, 597 F.2d at 414.
> Resolution of questions of intent often depends upon "the credibility of the
> witnesses, which can best be determined by the trier of facts after
> observation of the demeanor of the witnesses during direct and cross-
> examination." Morrison v. Nissan Motor Co., Ltd., *365365601 F.2d 139,
> 141 (4th Cir. 1979)."

## <u>(A) THE DISTRICT COURT ERRED IN NOT APPLYING</u><br><u>CONTRACT LAW PRINCIPLES IN REACHING ITS DECISION</u>

"Settlement agreements are treated as contracts subject to the general

principles of contract interpretation." *Byrum v. Bear Inv. Co*., 936 F.2.d 173, 175

(4th Cir. 1991). See also, *Intersections, Inc.v. Loomis* No. 1:09-cv-597

(LMB/TCB).2010 WL 4623877 (E.D. Va.); Power Servs., Inc. v. MCI

Constructors, Inc., 3 Fed. Appx. 190 (4th Cir. 2001); Thompson v. Everett, Inc. v.

Nat'l Cable Adver., LP, 57 F.3d 1317, 1323 (4th Cir. 1995).

In analyzing a settlement agreement, the Court in *Coleson v. Inspector*

*General of Dept. of Defense,* 721 F. Supp. 763 (E.D. Va. 1989) said: "At the

outset, it is necessary to determine what law applies in this case to the issue of

release. The general rule is that the construction and enforcement of settlement

agreements, including the determination as to the validity and scope of a release

therein, are governed by the general contract principles under state law." See *White*

*v. United States Department of Interior*, 639 F.Supp. 82, 86 (M.D.Pa.1986), aff'd,

815 F.2d 697 (3d Cir. 1987); *Barham v. Am. Med. Link, Inc*., 2010 U.S.Dist.

LEXIS 118117, at *5-8 (E.D. Va 2010 (recommending applying these principles to

enforce a settlement agreement).

## (i) THE PARTIES DID NOT REACH A COMPLETE SETTLEMENT AGREEMENT BECAUSE SIGNING THE RELEASE WAS A CONDITION PRECEDENT TO A BINDING AGREEMENT

The Court in *Intersections, Inc.v. Loomis No.* 1:09cv597 (LMB/TCB).2010 WL 4623877 (E.D. Va.), noted that "if any material portions of the proposed settlement terms were not resolved by the parties, there is no enforceable agreement.  Moreover, under Virginia law, a settlement that includes a term requiring that it be reduced to a signed writing is not enforceable unless and until that contingency is fulfilled. See *Golding v. Floyd*, 261 Va. 190, 539 S.E.2d 735 (2001) (holding that a handwritten "Settlement Agreement Memorandum" agreed to at a mediation was not a binding settlement agreement where all parties understood that a formal settlement agreement had to be drafted signed); see also, *Atl. Realty Co. v. Robertson's Ex'r*, 135 Va. 247, 253-54, 116 S.E. 476 (1923). (Finding that where the parties contemplate signing a written agreement later, there is a presumption that "no contract has been entered into, which requires strong evidence to overcome.")

In holding that the parties reached an enforceable settlement agreement, besides the release solely prepared by Defendant-appellees, the Court failed to note that Plaintiff-Appellant's signing of the release, was a condition precedent that must occur, before Defendant-Appellee's duty to perform -- pay Plaintiff-Appellant $15,000, becomes due. This fact is so material and fundamentally at the

17

heart of Defendant-appellees motion – for the District Court to force Plaintiff-Appellant to sign the release. Yet, the lower court ruled it had nothing to do with anything.

In *Atlantic Coast Realty Co. v. Robertson's Exr'r.*, 135 Va. 247, 116, S.E. 476 (1923), the Supreme Court of Virginia said: "In an action for breach of contract, the court in its instruction used the following language: "The circumstance that the parties do intend that a written contract or memorandum of their agreement should be prepared and signed is strong evidence to show that they did not intend the previous negotiations to amount to an agreement." See also, *Gerald T. Dixon, Jr., L.L.C. v. Hassell & Folkes, P.C.* 285 Va. 456, 723 S.E.2d 383 (2012), "Because the writing expressly required Dixon's signature as a condition precedent to becoming a written contract and Dixon failed to sign it, there was no written contract …" The present case, certainly, was such a circumstance. Ms. Wegman expressly told Mrs. Swift that she would prepare a release and send it to her to sign, which she did. Mrs. Swift's signature certainly was required as a condition precedent to the existence of a contract.

The Court also failed to take into account the meaning and effect of the deliberate warning in Frontier Airlines' own drafted release that Mrs. Swift should only sign, under oath, if she willingly assents to be bound by all the terms of the release. No other plausible or objective interpretation could be given for the reason

for that warning, other than that Mrs. Swift was not obligated to sign it; however, if she does, she will be bound by it. Ms. Wegman wants Mrs. Swift to perjure herself.

The lower court's decision conflictingly collides with Frontier Airlines' intentions and actions. If the lower court is correct in its ruling that the release is not part of the discussion and irrelevant, then it logically follows that Mrs. Swift has no further obligation, and Frontier Airlines' duty to pay her $15,000 becomes due. Defendant-appellee will not do this, simply because signing of the release is not only part of the discussion, but a material and most important part to the formation of a binding contract, in the circumstances, and without it, there is no settlement agreement, under Virginia law.

### (ii)THE DISTRICT COURT ERRED IN HOLDING THAT THERE WAS A MEETING OF THE MINDS, BECAUSE IN FACT, THERE WAS NO SUCH MEETING OF THE MINDS AND AS SUCH THERE CANNOT BE A BINDING SETTLEMENT AGREEMENT

The base-line requirement for finding the existence of a contract, written, oral, implied, or otherwise, is a showing of mutual assent at the time of agreement, i.e., the proverbial "meeting of the minds." *Cameron Jibril Thomaz, v. It's My Party, Inc., dba I.M.P., Inc*., et al., 2013WL 1450803 (E.D.Va); *Hwerz Corp v. Zurich American Ins. Co*., 496 F.Supp.2d 668, 676 (E.D.Va. 2007) (citing *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 379, 457 S.E.2d 36 (Va. 1995)). "It is elementary that mutuality of assent –the meeting of the minds of the parties –is an

essential element of all contracts.' *Lacey v. Cardwell*, 216 Va. 212, 223, 217

S.E.2d 835 (1975) (quoting *Green's Exr's v. Smith*, 146 Va. 442, 452 (1926);

*Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va.2007).

In order to have a binding contract, the parties must have a meeting of the

minds with regard "to all essential and material terms of the agreement." *Player v.*

*Chandler,* 299 S.C. 101, 382 S.E.2d 891, 893 (1989). The meeting of the minds

cannot be based on "secret purpose or intention on the part of one of the parties,

stored away in his mind and not brought to the attention of the other party." *Player*,

382 S.E.2d at 894.

Frontier Airlines' counsel, Ms. Wegman, solely prepared the release without

any discussion or input whatsoever, from Mrs. Swift, and her husband/counsel, and

sent it to Mrs. Swift to sign. After reading it, she refused to sign it because there

was no meeting of the mind because Ms. Wegman secretly added unknown,

undisclosed and undiscussed third-parties to the release.

Ms. Wegman at the hearing, argued that her inclusion of third parties in the

release, in addition to Frontier Airlines Inc. (the only party to Mrs. Swift's suit)

was usual and customary.  However, she failed to inform the District Court that

one of the third parties for example, Air World Travel, is the travel agent Mrs.

Swift bought her air ticket from. What gave rise to Mrs. Swift's underlying

discrimination case, which Frontier Airlines wants to dismiss, is a $25.00 carry-on

fee that Frontier's agent charged Mrs. Swift at Denver Airport. Mrs. Swift brought her discrimination action on the basis of race and origin because her Caucasian husband, who was similarly situated in all respects except for his race, was not charged. Defendant-Appellees defended the charge on the basis that Mrs. Swift's air ticket was a "basic" and their cheapest ticket from a "**third party**" (Air World Travel), that all basic tickets not bought directly from Frontier Airlines, was subject to carry-on fees. Even then, they could not explain why Mrs. Swift's husband was not charged, even though they shared the same electronic ticket.

Mrs. Swift and her husband's ticket, though bought from a "third party", was "economy" and not "basic." After some research on Defendant-Appellee's website, Mrs. Swift found that, according to Defendant-Appellee's own carry-on policy, Defendant-Appellee's should not have charged her in the first place because her ticket was "economy" and at the time Mrs. Swift purchased her ticket and travel, "economy" ticket holders were entitled to one free carry-on luggage, whether or not bought from third parties. On the basis of this new found evidence, Mrs. Swift asked the District Court leave to amend her Complaint to add a breach of contract claim. Defendant-Appellee opposed Mrs. Swift's motion to amend. In its opposition, Defendant-Appellee reiterated their argument that Air World Travel was a third party (not part of Frontier Airlines), that her ticket was "basic" (though they knew it was not), and they rightly charged her. JA 16  At motion hearing,

21

they repeated the same argument. However, the Magistrate Court Judge, granted

Mrs. Swift's motion and Frontier Airlines' motion to dismiss the breach of contract

claim also failed.

It is the same "third party", Air World Travel, that Defendant-Appellee

clearly held out as not being part of Frontier Airlines, that they now claim in their

release, as part of Frontier Airlines. This fact, Mrs. Swift hopes, will give this

Court some insight why they must rule in her favor and reverse the lower court.

Air World Travel told Mrs. Swift and her husband, that their ticket entitled them to

one free carry-on each. Both had one carry-on each. That, was contradicted with

what transpired and the treatment Mrs. Swift received from Defendant-Appellee at

Denver Airport, which Mrs. Swift believes entitles her to sue Air World Travel for

her troubles should she chose to do so. If compelled to sign the release, Defendant-

Appellee would effectively make the decision not to sue Air World Travel for Mrs.

Swift without her consent and free will. Defendant-Appellee cannot, and this Court

must not allow them to have it both ways.  The end cannot justify any means.

Virginia Courts have repeatedly held that there can be no contract where

there is no meeting of the minds of the parties. In *Intersections, Inc.v. Loomis* No.

1:09cv597 (LMB/TCB).2010 WL 4623877 (E.D. Va.), District Court Judge,

Leonie M. Brinkema, said: "A settlement agreement is a matter of contract, and

without a meeting of the minds as to **all material terms**, there can be no

enforceable settlement agreement as a matter of contract law." (Emphasis added.)

See *Grubb & Ellis Co. v. Potomac Medical Building LLC,* 2009 U.S. Dist. LEXIS

93471, 2009 WL 2057364 (E.D. Va. 2009).  See *Golding v. Floyd,* 261 Va. 190,

539 S.E.2d 735 (2001) (holding that a handwritten "Settlement Agreement

Memorandum" agreed to at a mediation was not a binding settlement agreement

where all parties understood that a formal settlement agreement had to be drafted

signed); see also, *Atl. Realty Co. V. Robertson's Ex'r*, 135 Va. 247, 253-54, 116

S.E. 476 (1923) (finding that where the parties contemplate signing a written

agreement later, there is a presumption that "no contract has been entered into,

which requires strong evidence to overcome.")

    As in *Intersections,* it was clear in the present case, that the parties

contemplated signing a written agreement later. When Ms. Wegman said to Mrs.

Swift, "I will then send you a confidential release and as soon as you sign it, we

will send you a check", Mrs. Swift replied, "We'll see." Mrs. Swift never promised

Ms. Wegmans that she will sign any release put in front her, no matter its content,

prior to, or after she read it. Yet, she seems to implying exactly that, in her

Affidavit and arguments as evidenced in the hearing transcript.

    After Mrs. Swift refused to sign the release, Ms. Wegman telephoned and

wrote to Mrs. Swift's husband requesting that he make his wife sign the release

and threatened court action if Mrs. Swift did not sign it. If the release amounted to

nothing as the Lower Court essentially ruled, why the trouble? Defendant-Appellee's action to enforce a mere settlement discussion can only be because of the $15,000 counter offer Ms. Wegman knowingly, unfairly, unconscionably, with ill-will and bad-faith, took advantage of Mrs. Swift, who was in an emotional state during the discussions. Under Section 1981, a count in Mrs. Swift's Complaint, a successful Plaintiff can recover up to $300,000 from a corporation with 500 or more employees, such as Frontier Airlines.

Although the American system of justice is adversarial, the Courts in this country, as arbiters of justice, do not, and must not ascribe to the notion that it is a zero-sum game, and that any means justifies the end, no matter what. Hence, Mrs. Swift, in this appeal, respectfully requests that this Court invalidate that notion, by reversing the lower court's decision.

In *Charbonnages de France v. Smith*, 597 F.2d 406 (1979) this Court said: "The essence of contract formation is, in the traditional formulation, a 'meeting of the minds' of the contracting parties, or in the more accurate contemporary formulation, their manifestations of mutual assent to a bargained-for exchange of promises or performances. See Restatement (Second) of Contracts ss 19-23 (Tent. Draft Nos. 1-7, 1973). '…disputes about whether a contract has or has not been formed as the result of words and conduct over a period of time are quintessentially disputes about " states of mind," since they involve not only the

subjective intentions had by the several parties but what "states of mind," what

understandings, *415 their manifestations of intention may have induced in others.

These subjective states and objective manifestations of intention present

interpretive issues traditionally understood to be for the trier of fact.'  See, e. g.,

*Cram v. Sun Insurance Office, Ltd*., 375 F.2d 670, 674 (4th Cir. 1967)."

In *McKay Consulting Inc., v. Rockingham Hosp*., 452, Fed Appx. 331

(2011), the Fourth Circuit said, "The Supreme Court of Virginia has consistently

set forth as necessary elements of contract formation that: '[T]he parties must have

a distinct intention common to both and without doubt or difference. Until all

understand alike, there can be no assent, and, therefore, no contract. Both parties

must assent to the same thing in the same sense, and their minds must meet as to

all the terms. If any portion of the proposed terms is not settled ... there is no

agreement.' *336 *Smith v. Farrell*, 199 Va. 121, 98 S.E.2d 3, 7 (1957)" (citations

omitted); see also *Persinger & Co. v. Larrowe*, 252 Va. 404, 477 S.E.2d 506, 509

(1996) ("Until the parties have a distinct intention common to both and without

doubt or difference, there is a lack of mutual assent, and therefore, no contract.")

(citation omitted). "[M]utuality of assent-the meeting of the minds of the parties—

is an essential element of all contracts." *Moorman v. Blackstock, Inc*., 276 Va. 64,

661 S.E.2d 404, 409 (2008) (internal quotation marks and citation omitted).

## <u>(iii) IT HAS AUTHORITY TO ENFORCE A DRAFT UNSIGNED</u><br><u>SETTLEMENT AGREEMENT BECAUSE THERE</u><br><u>WAS NO SETTLEMENT AGREEMENT</u>

An elementary principle of contract law is that a party signing a written

contract has a duty "to inform himself of its contents before executing …it."

*Corbett v. Bonney*, 202 Va. 933, 938, 121 S.E.2d 476 (1961). This is what Mrs.

Swift did and decided not to sign.  It was one sided document, with terms that she

never discussed or agreed to.  She believes also, that it was an unconscionably one

sided document borne out of one party dominating every process, and that the

consideration ($15,000) was so inadequate, objectively and unacceptably unfair,

given the likelihood of success on the merit of her underlying discrimination case.

In *Sengal v. Fakouri Elec. Eng'g, Inc*. (E.D. Va. 2011), the Court noted: "It

is well settled that a district court retains inherent jurisdiction and equitable power

to enforce agreements entered into in settlement of litigation before that court."  "It

is clear that the district court only retains the power to enforce complete settlement

agreements; it does not have the power to impose, in the role of final arbiter, a

settlement agreement where there was never a meeting of the parties' minds."

*Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir.1983) (citing *Millner v. Norfolk &*

*W. Ry. Co.*, 528 F.2d 423, 425 (4th Cir. 1975)). See also *Hensley v. Alcon Labs.*,

Inc., 277 F.3d 535, 540 (4th Cir. 2002).

Although the lower court may retain inherent authority, is limited only to where there is agreement on the whole terms of discussions. Authority to enforce such an agreement, however, applies to the agreement in its entirety, not to such selected parts that the court deems appropriate. *Columbus-Am. Discovery Group v. Atlantic Mutual Ins. Co*., 203 F.3d 291 (4th Cir. 1999); *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir.1983. If the Court determines that such a settlement agreement is only a partial settlement, then it should reject the whole. See *Wood. v. Virginia Hauling Co*., 528 F.2d 423, 426 (4th Cir. 1975) (the district court may either implement a complete settlement agreed to by the parties or restore them to the status quo).

## (B) THE DISTRICT COURT ERRED IN CONCLUDING THAT THERE WERE NO MATERIAL FACTS IN DISPUTE TO PRECLUDE SUMMARY JUDGMENT

Summary judgment "should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Charbonnages de France v. Smith*, 597 F.2d 406 (1979) *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir. 1950) (reversing grant of summary judgment in contract breach case). It is not appropriate "even where there is no dispute as to the evidentiary facts but only as to the conclusions to be drawn therefrom." *Pierce v. Ford Motor Co*., 190 F.2d 910, 915 (4th Cir. 1951). The burden is on the moving party to "show" that there "is no genuine issue

27

as to any material fact" and that he "is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). See *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct.

1598, 26 L.Ed.2d 142 (1970); *Phoenix Savings & Loan, Inc. v. Aetna Casualty &*

*Surety Co.*, 381 F.2d 245, 249 (4th Cir. 1967). In determining whether this

showing has been made, we must assess the evidence as forecast in the

documentary materials before the district court in the light most favorable to the

party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82

S.Ct. 993, 8 L.Ed.2d 176 (1962). This means that the assessment required is

substantially similar to, although perhaps even more stringent than, that involved in

the assessment of actual evidence on motions for directed verdict. See *Pierce v.*

*Ford Motor Co.*, 190 F.2d at 915: "Where, as here, the nonmoving party would on

trial carry the burden of proof, he is therefore entitled, as on motion for directed

verdict, to have the credibility of his evidence as forecast assumed, his version of

all that is in dispute accepted, all internal conflicts in it resolved favorably to him,

the most favorable of possible alternative inferences from it drawn in his behalf;

and finally, to be given the benefit of all favorable legal theories invoked by the

evidence so considered." See generally 10 Wright & Miller, Federal Practice and

Procedure: Civil s 2713, at 406-10, s 2716, at 431-32; See also Louis, Federal

Summary Judgment Doctrine: A Critical Analysis, 83 Yale L.J. 745, 748-49 n.19

(1974).

Mrs. Swift raised issues of material fact – that there was no meeting of the minds on the names in the release in her case, that her husband/counsel had no authority to discuss settlement on her behalf and did not do so, and the issue of her having an official Frontier Airlines apology, among other things.

In *Millner v. Norfolk & W. Ry. Co.*, 528 F.2d 423, 425 (4th Cir. 1975), this Court noted, that "the threshold question raised by this appeal is whether the settlement agreement relied on by N&W was amenable to summary enforcement by the district court." This Court held that it was not. Mrs. Swift, like Millner, argued that there were material facts that should preclude summary judgment, so the lower court likewise should be reversed.

In *Millner*, the court noted: "A number of courts have recognized the authority of a trial court summarily to enforce a settlement agreement and to enter judgment based on that agreement without plenary hearing." See, e. g., *Kukla v. National Distillers Products Co.*, 483 F.2d 619 (6th Cir. 1973); *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33 (5th Cir. 1967). "This authority, however, arises not under Rule 56 of the Federal Rules of Civil Procedure, but under the trial court's inherent equitable power summarily to enforce a settlement agreement when the practical effect is **merely to enter a judgment by consent**. [Emphasis added.] See *Wood v. Virginia Hauling Co.*, 528 F.2d 423, 425 (4th Cir. 1975); *Kukla,* 483 F.2d at 621. When, however, there is a material dispute about

the existence of a settlement agreement, see, e. g., *Kukla*, 483 F.2d at 621-22, or the authority of an attorney to enter a settlement agreement on behalf of his client, see, e. g., *Massachusetts Casualty Ins. Co. v. Forman,* 469 F.2d 259 (5th Cir. 1972), the trial court must, of course, conduct a plenary evidentiary hearing in order to resolve that dispute. The decisions in this circuit are in accord with these general principles. The leading case is *Napier v. Chesapeake & Ohio R.R.*, 582 F.2d 1344 (4th Cir. 1978), which was recognized as controlling by the district court below. At the time we decided Napier, we had already made it clear in *Wood v. Virginia Hauling Co.*, 528 F.2d at 425, that when there is a substantial factual dispute respecting the validity of a settlement agreement, the trial court must hold an evidentiary hearing in order to resolve that dispute."

Mrs. Swift denies that she made a binding settlement agreement with Frontier Airlines.  Mrs. Swift claims that Mr. Swift had no authority to enter any settlement agreement or make promises on her behalf because she never gave her husband any such authority. Mere presence of counsel does not mean he has settlement authority, and an email that has no legal effect, sent by counsel without consultation or knowledge of the client, does not translate to an agreement to settle.

## <u>(C) IT WAS ABUSE OF COURT'S DISCRETION IN NOT CONSIDERING UNFAIRNESS, BAD FAITH AND UNCONSCIONABILITY  IN SECURING A COUNTER OFFER OF $15,000, AS CLAIMED IN MRS. SWIFT'S AFFIDAVIT</u>

In her affidavit, Mrs. Swift described her relationship with Frontier Airlines' counsel Ms. Wegman since she filed her action. How she made her come to trust her the first time she told Mrs. Swift, that "what Frontier agent Jane Doe did to her, was horrible…" As the conversations become more personal, Ms. Wegman knew that Mrs. Swift believed her expressions were genuine, because Mrs. Swift on all occasions (after her phone call, when she will repeat how sorry she was at the awful way Mrs. Swift was treated), told Ms. Wegman that she was a nice person, and Ms. Wegman would say, thank you! That trust was so violated after Mrs. Swift realized at the end of the settlement discussion, that the friendliness was not at all genuine, but mere orchestrated tactics to gain an unfair advantage.

In *Derby v. Derby*, 378 S.E.2d 74 (1989) the Court was to consider whether the lower court erred in finding the separation agreement invalid because it was unconscionable. The court found fraud (constructive fraud) that consisted of Mrs. Derby's "opportunistically... [r]ecognizing and playing on [Mr. Derby's] weakness and [his] predisposition ... to do anything to get her back."  Constructive fraud is a "[b]reach of legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others or violate confidence. "*Wells v. Weston*, 229 Va. 72, 77, 326 S.E.2d 672, 675-76 (1985)

31

(citing Black's Law Dictionary 284 (5th ed. 1979)). When the accompanying

incidents are inequitable and show bad faith, such as concealments,

misrepresentations, undue advantage, oppression on the part of the one who

obtains the benefit, … and the like, on the part of the other, these circumstances,

combined with inadequacy of price, may easily induce a court to grant relief,

defensive or affirmative. Pomeroy, Equity Jurisprudence § 928 (5th ed. 1941).

In *Hooters of America v. Phillips*, 173 F.3d 933, 938 (4th Cir.1999), which

dealt with unconscionability of arbitration clause, the court said: "rescission will

not be granted for a minor or casual breach of a contract, but only for those

breaches which defeat the object of the contracting parties." *Rogers v. Salisbury

Brick Corp*., 299 S.C. 141, 382 S.E.2d 915, 917 (1989); see also *Hogue v. Pellerin

Laundry Mach. Sales Co*., 353 F.2d 772, 774 (8th Cir.1965) (noting rescission is

permitted "for any breach of contract of so material and substantial a nature as

would constitute a defense to an action brought by the party in default for a refusal

to proceed with the contract." (quoting Williston on Contracts § 1467 (rev. ed.)).

Mrs. Swift believes that when the Court objectively reviews factual

assertions in her Affidavit and her arguments, the overall circumstance of what

transpired between the parties on January 9, 2015, the release solely prepared by

Defendant-Appellee's counsel, without any discussion about it or input

whatsoever, from Mrs. Swift or her husband/counsel, the threat of court action by

32

Ms. Wegman even after she was informed that there was still chance for the parties to negotiate a fair and acceptable settlement to both parties, and that action, the result, which is being appealed, the court would come to the conclusion, as Mrs. Swift, and as the Court in *Hooters, Rogers,* and *Hogue* came to, that Ms. Wegman's conduct in the whole circumstances, was intentionally to defeat the object of the contracting parties, i.e., reaching a reasonable, fair and equitable settlement in good faith, that is acceptable to both parties.

The Court held that *Hooters* had a duty to perform in good faith and that they violated that duty. Moreover, Hooters had a duty to perform its obligations in good faith. See Restatement (Second) of Contracts § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."); *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir.1998). Good faith "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement (Second) of Contracts § 205 cmt. a. Bad faith includes the "evasion of the spirit of the bargain" and an "abuse of a power to specify terms. Id. § 205 cmt. d. Thus we conclude that the Hooters rules also violate the contractual obligation of good faith."

Mrs. Swift believes Defendant-Appellee acted in bad faith. Although *Hooters* is an arbitration case, the equitable principles applied there are also applicable in the present case.

### (D) COMPELLING PLAINTIFF-APPELLANT TO SIGN RELEASE THAT WOULD SUBJECT HER TO PERJURY

Despite the District Judge's ruling, he did not make any pronouncement in his order or otherwise regarding the release.  Although Mrs. Swift believes that the District Court cannot force her to commit perjury, she would appreciate the Fourth Circuit's pronouncement on the issue.

### CONCLUSION

There was no binding agreement between the parties, because there was no meeting of the minds. There were genuine material facts in dispute that precluded summary judgment.  For these reasons and the other foregoing arguments and the authorities cited, Plaintiff-Appellant pray this Court to reverse the District Court's decision to dismiss her case, and remand for further proceedings and/or trial.

**ORAL ARGUMENT IS RESPECTFULLY REQUESTED ON THE ISSUES RAISED IN THIS APPEAL.**

Respectfully submitted,


/s/ Stephen Christopher Swift                    /s/ Charity Chidinma Emeronye Swift

Stephen Christopher Swift                        Charity Chidinma Emeronye Swift
Swift & Swift, Attorneys at Law, P.L.L.C.        Swift & Swift, Attorneys at Law, P.L.L.C.
2121 Eisenhower Avenue, Suite 200                2121 Eisenhower Avenue, Suite 200
Alexandria, Virginia 22314-4688                  Alexandria, Virginia 22314-4688
Telephone: (703) 418-0000                        Telephone: (703) 418-0000
Facsimile: (703) 535-8205                        Facsimile: (703) 535-8205
E-Mail: steve@swift.law.pro                      E-Mail: charity@swift.law.pro

*Counsel for Plaintiff-Appellant*               *Counsel for Plaintiff-Appellant*
*Charity Chidnma Emeronye Swift*                 *Charity Chidinma Emeronye Swift*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _____        Caption: _____

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ ]     this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]     this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ ]     this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

   [ ]     this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s)_____

Attorney for_____

Dated:_____

# CERTIFICATE OF SERVICE

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____        _____
      Signature                                                        Date