RECORD NO. 15-1261

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

CHARITY CHIDINMA EMERONYE SWIFT,

*Plaintiff-Appellant,*

v.

FRONTIER AIRLINES, INC. and JANE DOE,

*Defendants-Appellees.*

On appeal from the United States District Court
for the Eastern District of Virginia, Alexandria Division

## RESPONSE BRIEF OF DEFENDANTS-APPELLEES

Sarah E. Moffett (Va. Bar 18234)
Joseph M. Rainsbury (Va. Bar 45782)
LECLAIRRYAN, a Professional
Corporation
2318 Mill Road
Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 647-5930
Facsimile: (703) 647-5980
sarah.moffett@leclairryan.com

Austin W. Bartlett
Paula L. Wegman
Steven L. Boldt
Charles Ingrassia
ADLER MURPHY & MCQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Telephone: (312) 345-0700
Facsimile: (312) 345-9860
abartlett@amm-law.com

*Counsel for Defendants-Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1261__        Caption: __Swift v. Frontier Airlines, Inc. et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Frontier Airlines, Inc.__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                          ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Frontier Airlines Holdings, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____  Date: _____March 23, 2015_____

Counsel for: Frontier Airlines, Inc.

## CERTIFICATE OF SERVICE
****************************

I certify that on ___March 23, 2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Stephen Swift, Esq.
Swift & Swift, Attorneys at Law, P.L.L.C.
21 Eisenhower Avenue
Suite 200
Alexandria, VA 22314
steve@swift.law.pro

_____          _____March 23, 2015_____
(signature)                                    (date)

- 2 -

# TABLE OF CONTENTS

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................ 1

JURISDICTIONAL STATEMENT ....................................................... 3

COUNTER-STATEMENT OF ISSUES .................................................. 3

COUNTER-STATEMENT OF FACTS ................................................... 4

    A.    Background of Plaintiff's Claims ........................................... 4

    B.    The Parties' Settlement Agreement ...................................... 5

    C.    The District Court's Findings and Order on Motion to Enforce ................................................................................. 8

SUMMARY OF ARGUMENT ........................................................... 12

ARGUMENT ..................................................................................... 15

Standard of Review .......................................................................... 15

    I.    THE DISTRICT COURT PROPERLY ENFORCED THE PARTIES' UNDISPUTED AND VALID SETTLEMENT AGREEMENT .............................................................................. 17

        A.    There was a meeting of the minds between both parties as to the material terms of the settlement agreement ................................................................ 18

        B.    The oral settlement agreement was not contingent upon a formal release or Plaintiff's further approval of the settlement, and Plaintiff's counsel had

authority to settle..........................................................22

II. FRONTIER'S ALLEGEDLY FRIENDLY DEMEANOR IN "SECURING THE COUNTEROFFER" IS NOT GROUNDS TO VOID THE AGREEMENT..............................................27

CONCLUSION ...................................................................31

CERTIFICATE OF COMPLIANCE...........................................33

CERTIFICATE OF SERVICE................................................34

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Indus. of Blind*, 901 F.2d 40 (4th Cir. 1990) .................... 24

*Atherton v. FDIC*, 519 U.S. 213 (1997) ................................... 19

*Belk, Inc. v. Meyer Corp.*, 679 F.3d 146 (4th Cir. 2012)......................... 26

*Bralley v. Carey*, 2010 U.S. Dist. LEXIS 120164
(E.D. Va. Nov. 12, 2010) ......................................................... 19

*Brown v. Nucor Corp.*, 576 F.3d 149 (4th Cir. 2009) ............................. 16

*Campbell v. Adkisson, Sherbert & Assocs.*, 546 Fed. Appx. 146
(4th Cir. 2013) ......................................................... 16, 18, 22

*Chang v. First Colonial Sav. Bank*, 410 S.E.2d 928 (Va. 1991) ............. 19

*EEOC v. Propak Logistics, Inc.*, 746 F.3d 145 (4th Cir. 2014) .............. 16

*Fed. Fin. Co. v. Hall*, 108 F.3d 46 (4th Cir. 1997) ................................. 18

*Free Bridge Auto Sales, Inc. v. Focus, Inc.*, 2014 U.S. Dist. LEXIS
13738 (E.D. Va. Feb. 4, 2014) ............................................... 17

*Golding v. Floyd*, 539 S.E.2d 735 (Va. 2001) ......................................... 24

*Hensley v. Alcon Labs., Inc.*, 277 F.3d 535 (4th Cir. 2002)............... 16, 18

*Hooters of America v. Phillips*, 173 F.3d 933 (4th Cir. 1999)................. 28

*In re Under Seal*, 749 F.3d 276 (4th Cir. 2014) ...................................... 23

*Judicial Inquiry & Review Comm'n of Va. v. Elliott*, 630 S.E.2d 485

(Va. 2006) ............................................................................... 19

*Levy v. Beach Inv. Corp.*, 181 S.E.2d 607 (Va. 1971) ............................... 18

*Lomax v. Am. Tel. & Tel. Co.*, 1993 U.S. App. LEXIS 4740
(4th Cir. Mar. 10, 1993) ........................................................... 24

*Millner v. Norfolk & Western R. Co.*, 643 F.2d 1005 (4th Cir. 1981) ..... 15

*Moore v. Beaufort Cnty., N.C.*, 936 F.2d 159, 162 (4th Cir. 1991) .......... 20

*Mungin v. Calmar Steamship Corp.*, 342 F. Supp. 484 (D. Md. 1972) .. 17

*Petty v. Timken Corp.*, 849 F.2d. 130 (4th Cir. 1988) ................ 24, 25, 26

*Smith v. Columbia Gas Transmission Corp.*, 1999 U.S. App. LEXIS
6521 (4th Cir. Apr. 9, 1999) ....................................................... 17

*Sengal v. Fakouri Elec. Eng'g, Inc.*, 2011 U.S. Dist. LEXIS 134820
(E.D. Va. Nov. 22, 2011) ........................................................... 31

*Snyder-Falkinham v. Stockburger*, 457 S.E.2d 36 (Va. 1995) .......... 23, 24

*Topiwala v. Wessell*, 509 Fed. Appx. 184 (4th Cir. 2013) ................ 29, 30

*Young v. FDIC*, 103 F.3d 1180 (4th Cir. 1997) ..................... 17, 21, 23, 28

**Statutes**

9 U.S.C. §§ 1-6 ........................................................................ 28

28 U.S.C. § 1331 ...................................................................... 3

28 U.S.C. § 1343 ...................................................................... 3

28 U.S.C. § 2201 ...................................................................... 3

28 U.S.C. § 2202 ...................................................................... 3

42 U.S.C. § 1981a ..................................................................... 3

## Other Authorities

Restatement (Second) of Contracts § 24 (1981) ............................... 19

## Rules

Fed. R. App. P. 28 ............................................................. 26, 28

Fed. R. Civ. P. 56 ................................................................. 15

## PRELIMINARY STATEMENT

This case involves a sophisticated party's attempt to renege on a valid settlement agreement, in contradiction of this Court's policy strongly favoring such agreements and affording district courts broad authority to enforce them. The dispute involved a $25.00 baggage fee that Plaintiff Charity Chidinma Emeronye Swift ("Plaintiff") claimed Defendant Frontier Airlines, Inc. and an unknown gate agent (collectively "Frontier") wrongfully charged her. Plaintiff maintains that Frontier imposed the fee due to her race or national origin. The appeal arises from the District Court's order dismissing Plaintiff's lawsuit pursuant to a valid and enforceable oral settlement agreement.

The material facts are not in dispute. On January 9, 2015, Plaintiff (who is an attorney), her counsel (who is also her husband), and Frontier's counsel engaged in settlement discussions. The negotiations ended with the parties agreeing that Plaintiff would dismiss her case with prejudice in return for payment of a confidential settlement amount. As the District Court found, there is no dispute that Frontier accepted Plaintiff's counter offer and the parties shook hands to consummate the agreement. (Joint Appendix, D.E. #14 ("J.A.") 230-

34, 164.) The settlement terms were confirmed in writing via e-mail that day and again four days later.

But on January 14, 2015, Plaintiff had second thoughts about the amount of money she previously agreed to accept in settlement. (Op. Br. at 26.) As a result, Plaintiff's counsel informed Frontier's counsel that Plaintiff would not honor the settlement, which required Frontier to bring a Motion to Enforce the Settlement Agreement. The District Court granted that motion and dismissed the case.

Now on appeal, Plaintiff still offers no basis for her decision to back out of the settlement, other than regretting the terms that she previously agreed to accept. Nonetheless, the District Court faithfully applied Fourth Circuit and Virginia law, correctly found the existence of a valid settlement agreement, and properly exercised its discretion to enforce that agreement. There was no error, clear or otherwise, in the District Court's findings of material fact, and Plaintiff does not dispute those material facts. Therefore, the District Court acted within its inherent authority to dismiss Plaintiff's case pursuant to the parties' settlement.

In short, the District Court got it right. This Court should now affirm.

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Virginia, Alexandria Division, had subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1331, because Plaintiff's action arose under federal law, namely, 28 U.S.C. §§ 1343(a)(4), 2201, 2202 and 42 U.S.C. § 1981a(b)(1).

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final order of the District Court.

The District Court entered its final order dismissing this case on February 20, 2015. Appellant filed a Notice of Appeal on March 5, 2015.

## COUNTER-STATEMENT OF ISSUES

1.  Whether the District Court committed clear error when it found that a valid oral settlement agreement was created on January 9, 2015 based upon the material facts left undisputed by Plaintiff below?

2.    Whether the District Court abused its discretion when it enforced the valid January 9, 2015 oral settlement agreement against Plaintiff?

## COUNTER-STATEMENT OF FACTS

### A.    Background of Plaintiff's Claims.

This case arises out of a $25.00 baggage fee that Frontier charged Plaintiff on September 4, 2013, while she was traveling on a Frontier flight from Bozeman, Montana to Arlington, Virginia, with a stopover in Denver, Colorado. (J.A. 59-60.) Plaintiff, a lawyer, claimed that Frontier charged her the fee due to her race or national origin. (J.A. 14.)

On September 4, 2014, Plaintiff filed suit against Frontier and Jane Doe, alleging discrimination under 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, as well as claims for intentional infliction of emotional distress ("IIED") and defamation under Virginia law. (Dkt. 1.) On December 31, 2014, Frontier prevailed on a motion to dismiss Plaintiff's alleged IIED and defamation claims, which Plaintiff does not appeal. (Dkt. 38.)

 On December 10, 2014, Plaintiff sought leave to amend her complaint in order to assert additional claims for breach of contract and

4

false imprisonment under Virginia law. (J.A. 7.) On January 9, 2015, Magistrate Judge Ivan D. Davis denied Plaintiff's request to assert her false imprisonment claim, but granted Plaintiff leave to assert her breach of contract claim. (J.A. 50.)

## B.    The Parties' Settlement Agreement.

Following the January 9, 2015 hearing, Plaintiff, her counsel (who is also her husband), and Frontier's counsel met at Frontier's local counsel's office in Alexandria, Virginia. (J.A. 132-33.) There, they discussed the possibility of a settlement, and during the discussion, Plaintiff explained that she "would like the whole matter to go away if I could." (J.A. 159.) On the advice of counsel, Plaintiff personally offered to settle her case for a certain amount. (J.A. 133.) Frontier responded that it would pay that amount in exchange for Plaintiff dismissing her claims and keeping the amount of the settlement confidential. (J.A. 133.) Plaintiff and her counsel agreed to these terms, and the meeting ended with the parties shaking hands to consummate the agreement. (J.A. 133.) Frontier's counsel confirmed the terms of the settlement agreement that same day by e-mail, which stated:

> Dear Mr. Swift, please let this confirm that plaintiff, Ms. Charity Swift, has agreed to release and dismiss all her

5

claims against Frontier, as more fully set forth in her complaint, in exchange for $[REDACTED].[1] The settlement terms include confidentiality. We will forward a Release and Settlement agreement to you early next week.

My thanks to both you and Charity for your time today. It was a pleasure meeting you both in person. Have a good weekend.

Paula Wegman

(J.A. 136.)

On January 12, 2015, Frontier's counsel forwarded a written Release and Settlement Agreement. The following day, Plaintiff's counsel responded in relevant part:

Dear Paula:

Could you please add a line for a Frontier Airline, Inc. officer/agent who has a binding authority to sign. ***We were hoping that your client will sign their part and send it to us for Charity to sign***. As soon as we receive this, we will do our part and return it to you.

Sincerely,

Stephen Christopher Swift

---

[1] Despite Plaintiff's efforts on appeal to violate the confidentiality agreement between the parties as to the amount of the settlement, Frontier will continue to honor the parties' agreement and will redact all references in its brief to the confidential amount.

(J.A. 141 (emphasis added).) Other than Plaintiff's request for the additional signature line, Plaintiff did not dispute, contest, or object to any of the terms contained in the written Release and Settlement Agreement. (J.A. 141.)

On January 14, 2015, however, Plaintiff's counsel advised Frontier's counsel by e-mail that Plaintiff intended to renege on the settlement agreement:

> I have now had the time to fully and properly evaluate her case after Judge Davis' decision to allow her to partly amend her complaint. On the basis of my review, I have advised my client that she should not go ahead with the agreement at this time because the settlement is not fair and not in her best interest, and she has accepted my advice. In view of this, we are not prepared to settle at this time for [REDACTED].

(J.A. 142.)

Two days later, Frontier's counsel reminded Plaintiff's counsel by email that the parties had reached a settlement agreement and tendered the agreement. (J.A. 143.) Plaintiff's counsel, however, refused to honor the agreement. As a result, Frontier filed a Motion to Enforce the Settlement Agreement ("Motion to Enforce"), which is at issue in this appeal. (J.A. 135.)

## C.    The District Court's Findings and Order on Motion to Enforce.

On February 20, 2015, following full briefing, the District Court entertained oral argument on Frontier's Motion to Enforce. During that hearing, Plaintiff's counsel argued that the agreement "implie[d]" that it was not final until signed. (J.A. 191.) When the District Court asked Plaintiff's counsel to specify what the parties said during the January 9 meeting to objectively convey that intent, Plaintiff's counsel could not provide a direct answer, and instead responded "it was more what was not said." (J.A. 191.) Plaintiff's counsel attempted to clarify that the written release identified parties not mentioned during the January 9 meeting and that the parties did not reach an agreement regarding an apology. (J.A. 191-92.) Plaintiff later conceded that any discussion regarding an apology occurred after the parties' handshake. (J.A. 193.)

The District Court granted Frontier's motion and dismissed Plaintiff's case as settled. (J.A. 208.) In arriving at this conclusion, the District Court found that the following material facts were not in dispute:

- On January 9, 2015, Plaintiff, her counsel, and Frontier's counsel engaged in settlement discussions at Frontier's local counsel's

office. The discussions occurred after a hearing before Magistrate Judge Davis. (J.A. 203-04.)

- Plaintiff offered to settle for a certain amount. (J.A. 204.)

- Frontier responded that it would pay that amount in exchange for Plaintiff dismissing all claims and keeping the settlement confidential. (J.A. 204.)

- Plaintiff and her counsel agreed and the parties shook hands in consummation of the agreement. (J.A. 204.)

- Frontier's counsel confirmed the settlement terms by e-mail later that day. (J.A. 204.)

- On January 12, 2015, Frontier's counsel forwarded a written Release and Settlement Agreement reflecting the parties' settlement terms. (J.A. 204.)

- On January 13, 2015, Plaintiff's counsel responded by e-mail with a request that a line be added to the settlement agreement for Frontier Airlines' signature. (J.A. 204.)

- On January 14, 2015, Plaintiff's counsel informed Frontier's counsel that, after his further evaluation, he advised Plaintiff to not honor the agreement. (J.A. 204-05.)

9

- On January 16, 2015, Frontier's counsel forwarded the previously tendered written agreement with the requested line for Frontier's signature, which had been executed on Frontier's behalf. (J.A. 205.)

- In response, Plaintiff refused to execute the agreement, and Defendants' Motion to Enforce Settlement Agreement followed. (J.A. 205.)

(J.A. 203-05.)

Based upon these undisputed facts, the District Court found that the terms of the parties' January 9 settlement agreement were clear, confirmed in writing, and enforceable. (J.A. 206.) Any subsequent disputes over the scope of the release or Plaintiff's willingness to sign the agreement did not affect the finality of the oral settlement agreement. (J.A. 206.) Plaintiff's comments that she was hopeful for an apology from Frontier, which occurred after the parties' handshake, did not vitiate the finality and enforceability of the agreement. (J.A. 206-07.)

The District Court also carefully analyzed Plaintiff's arguments in opposition to the Motion to Enforce, namely: (1) that the District Court

10

lacks jurisdiction to enforce the settlement; (2) that a jury is required to decide whether an enforceable settlement agreement exists; (3) that there is no enforceable contract because the parties did not reach a meeting of the minds; and (4) that the settlement agreement is impossible to perform because Frontier violated the confidentiality agreement by filing the Motion to Enforce. (J.A. 205-06.)

In rejecting these arguments, the District Court specifically found that: (1) the District Court had subject matter jurisdiction to enforce the settlement of pending litigation before it, including the present case; (2) no material facts were in dispute that would necessitate an evidentiary hearing, and in any event, a hearing would not involve a jury; (3) the parties reached a meeting of the minds, as reflected in the objective manifestations of intent and consent that occurred at the January 9 meeting; and (4) Frontier's filing of the Motion to Enforce did not constitute a breach of the agreement's confidentiality provision, as Frontier did not disclose the amount of the settlement. (J.A. 207-08.)

As a result, the District Court granted Frontier's Motion to Enforce and dismissed Plaintiff's case pursuant to the parties'

settlement agreement. (J.A. 208-09.) Plaintiff continued her refusal to accept the settlement of her case, and this appeal followed. (J.A. 211.)

## SUMMARY OF ARGUMENT

The only issues here are whether the District acted within its discretion in finding the existence of, and enforcing, a valid settlement agreement. Plaintiff raises four alleged errors that the District Court committed when it enforced the parties' January 9 settlement agreement. These arguments should be rejected.

First, Plaintiff's argument that the District Court erred by not applying principles of contract law when considering whether the parties reached a meeting of the minds is belied by the record. The District Court carefully considered what terms the parties agreed to during their January 9 settlement negotiations, which terms were material, and whether there was a meeting of the minds when the parties consummated the agreement. Those material terms were simple and clear: Plaintiff would dismiss all of her claims against Frontier in exchange for the agreed-upon amount, subject to confidentiality. As the District Court found, these facts are not in dispute. Therefore, Plaintiff's second thoughts as to the settlement amount and her after-

the-fact request for an apology did not affect the finality and enforceability of the January 9 settlement agreement.

Second, Plaintiff's claim that the District Court erred when it concluded that summary judgment was warranted despite a factual dispute is misplaced. Frontier did not move for, nor obtain, summary judgment against Plaintiff. Instead, the District Court exercised its inherent authority to enforce the parties' agreed settlement. In doing so, the District Court dismissed the case by considering the ***material*** facts, which are undisputed. As the District Court properly found, "[P]laintiff's unexpressed subjective intentions not to be bound in the absence of her executing such a written agreement does not affect the enforceability of the fully consummated oral agreement that was reached on January 9." (J.A. 208.) Thus, there was no error.

Third, Plaintiff's contention that the District Court erred by not considering the "unfairness" in allowing Frontier's counsel to "secure a counter offer" by being deceptively friendly is also unavailing. This argument ignores that Plaintiff made the "bad faith" argument in the context of seeking attorney's fees. At the end of the hearing, the District Court rejected that argument in refusing to award attorney's fees to

13

either party. (J.A. 208.) The District Court's ruling recognizes the notion that two sophisticated attorneys, like Plaintiff and her counsel, allegedly being lulled into a false sense of security by Frontier's counsel's friendly nature simply does not provide any legal grounds to void the valid settlement agreement. Similarly, Plaintiff's request that this Court extend the Federal Arbitration Act's good-faith requirements governing employers in drafting arbitration agreements to settlement agreements reached between two represented private parties in civil litigation has no basis in law.

Fourth, Plaintiff has waived her argument that the District Court cannot compel Plaintiff to commit perjury. Respectfully, this two-sentence argument violates Federal Rule of Appellate Procedure 28 and reflects Plaintiff's confusion regarding the underlying facts.

In sum, there is no dispute that the parties reached a settlement agreement. Plaintiff's appeal is nothing more than an attempt to unwind that valid agreement because she wants more money than what she previously agreed to accept. Therefore, the District Court properly found that the parties entered into a valid and enforceable oral

settlement agreement, and the District Court acted well within its discretion by enforcing that agreement and dismissing Plaintiff's case.

Therefore, this Court should affirm.

## ARGUMENT

## Standard of Review

Plaintiff incorrectly contends that a *de novo* standard governing summary judgment review pursuant to Federal Rule of Civil Procedure 56 guides this Court's review of the District Court's order dismissing her case pursuant to settlement. Frontier never moved for summary judgment on the Plaintiff's underlying claims. Rather it moved to enforce the settlement agreement, and therefore, Rule 56 does not apply. As recognized by this Court in *Millner v. Norfolk & Western Railway Co.*:

> A number of courts have recognized the authority of a trial court summarily to enforce a settlement agreement and to enter judgment based on that agreement without plenary hearing. This authority, however, arises ***not*** under Rule 56 of the Federal Rules of Civil Procedure but under the trial court's inherent equitable power summarily to enforce a settlement agreement when the practical effect is merely to enter a judgment by consent.

643 F.2d 1005, 1009 (4th Cir. 1981) (emphasis added) (internal citations omitted).

15

Thus, because Plaintiff's appeal arises out of the District Court's inherent power to enforce a settlement agreement, the District Court's factual findings are reviewed for clear error and its decision whether to enforce the settlement agreement is reviewed for an abuse of discretion. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 541 (4th Cir. 2002). Under the clear error standard, the District Court's factual findings should not be reversed unless this Court is left with a definite and firm conviction that a mistake has been made. *EEOC v. Propak Logistics, Inc.*, 746 F.3d 145, 153 (4th Cir. 2014). A district court abuses its discretion when its decision is "'guided by erroneous legal principles' or 'rests upon a clearly erroneous factual finding.'" *Campbell v. Adkisson, Sherbert & Assocs.*, 546 Fed. Appx. 146, 153 (4th Cir. 2013) (quoting *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009)). As such, reversal is ***only*** proper where there is a "definite and firm conviction" that the court below, after weighing the relevant factors, committed a clear error of judgment in reaching its conclusion. *Id.* at 153 (citing *Brown*, 576 F.3d at 161).

Moreover, when there is no doubt that a settlement agreement exists or that an attorney had authority to enter that agreement, a

district court has the inherent authority to summarily enforce the agreement. *Young v. FDIC*, 103 F.3d 1180, 1194 (4th Cir. 1997).

Finally, settlement agreements are strongly favored by courts. *Free Bridge Auto Sales, Inc. v. Focus, Inc.*, 2014 U.S. Dist. LEXIS 13738, at *5 (E.D. Va. Feb. 4, 2014). As a result, district courts are given wide latitude to enforce a settlement agreement, and such agreements will be vacated only in extraordinary circumstances. *Id.* (citing *Mungin v. Calmar Steamship Corp.*, 342 F. Supp. 484, 485 (D. Md. 1972)). Toward that end, in determining whether a settlement agreement is enforceable, this Court does not substitute its own judgment for that of the district court. *Smith v. Columbia Gas Transmission Corp.*, 1999 U.S. App. LEXIS 6521, at *8 (4th Cir. Apr. 9, 1999). Rather, this Court's only task is to determine whether the district court exercised its discretion arbitrarily or capriciously. *Id.*

## I.  THE DISTRICT COURT PROPERLY ENFORCED THE PARTIES' UNDISPUTED AND VALID SETTLEMENT AGREEMENT.

Plaintiff argues that the District Court failed to apply principles of contract law when it found that the parties entered into a valid and enforceable settlement agreement. In particular, Plaintiff claims that

the District Court did not consider disputed facts as to whether the parties had reached a meeting of the minds, whether the settlement agreement was conditioned upon a written agreement, and whether Plaintiff's counsel had authority to negotiate the settlement.

Each of these arguments falls short.

## A. There was a meeting of the minds between both parties as to the material terms of the settlement agreement.

Standard contract principles apply to the interpretation and enforcement of settlement agreements. *Hensley*, 277 F.3d at 540. In order to enforce a settlement agreement, a district court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Campbell*, 546 F. Appx at 152 (quoting *Hensley*, 277 F.3d at 540-41).

Under Virginia law,[2] a contract is formed when the offeree communicates acceptance to the offeror. *See, e.g.*, *Levy v. Beach Inv.*

---

[2] Choice of law in the context of settlement agreements for claims arising under federal law is unsettled, and in the context of pendant claims brought contemporaneously under state law, unaddressed by this Circuit. Adhering to United States Supreme Court precedent, this Court has previously held that federal common law rules should only be created when there is a significant conflict between a federal policy or interest and the use of state law. *Fed. Fin. Co. v. Hall*, 108 F.3d 46, 49

*Corp.*, 181 S.E.2d 607, 607 (Va. 1971). An offer, which is typically (but not always) a promise, is simply a manifestation of a willingness to enter into a bargain. *Chang v. First Colonial Sav. Bank*, 410 S.E.2d 928, 930 (Va. 1991) (citing RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981)). The offer is important, because it identifies the bargained-for exchange and creates the power to accept for the offerree. *Id.* at 930-31. Thus, "[t]he most basic principle of contract law" is that when one party makes a clear, definite, and explicit offer, which leaves nothing open for negotiation, the other party accepting that offer will complete the contract. *Judicial Inquiry & Review Comm'n of Va. v. Elliott*, 630

---

(4th Cir. 1997) (citing *Atherton v. FDIC*, 519 U.S. 213 (1997)). Therefore, cases requiring federal common law rules are few and restricted. *Id.* Frontier is unaware of authority from this Court discussing *Atherton* and federal common law in the context of settlement negotiations. However, lower courts have noted that federal common law applies, although state contract law is also "appropriately" part of the analysis. *E.g.*, *Bralley v. Carey*, 2010 U.S. Dist. LEXIS 120164, at *4-5 (E.D. Va. Nov. 12, 2010) (holding that, in a settlement regarding claims under federal law, the court could look to Virginia contract law to govern the dispute). In this case, Plaintiff does not identify any conflict between a federal policy or interest and using Virginia law to govern the formation of the contract, and her brief indicates that Virginia law applies. (Op. Br. at 17.) Nonetheless, as noted, even if federal common law applies, Virginia common law may be considered. *Bralley*, 2010 U.S. Dist. LEXIS 120164, at *5-7 (referencing Virginia law and concluding that, under Virginia law, the parties reached an agreement despite referencing a subsequent formal writing because the agreement was not contingent on that memorialization).

19

S.E.2d 485, 496 (Va. 2006). In deciding whether a settlement agreement has been reached, courts look to the parties' ***objectively*** manifested intentions and do not consider the parties' unexpressed subjective thoughts. *Moore v. Beaufort Cnty., N.C.*, 936 F.2d 159, 162, 164 (4th Cir. 1991) (emphasis added) (holding that a party could not avoid a valid settlement agreement by claiming a subjective belief that no agreement existed).

That is exactly what the District Court did here. There is no dispute that Plaintiff made a clear, definite, and explicit counter-offer that left nothing to be negotiated; Frontier accepted that offer; Plaintiff personally consummated that agreement by a handshake with Frontier's counsel; and the parties confirmed the agreement via e-mail (in addition to her counsel, Plaintiff personally received all e-mail correspondence regarding the agreement). (J.A. 203-06.) Indeed, the January 13 e-mail from Plaintiff's counsel unequivocally noted that Plaintiff "hop[ed]" that Frontier would sign the agreement and send it to Plaintiff for her signature. (J.A. 141.)

Plaintiff readily concedes these facts before this Court. Her brief notes that she "made a counter ***offer*** of $[REDACTED]" and that

20

Frontier accepted that counteroffer." (Op. Br. at 4.).[3] As a result, a plenary hearing for the District Court to further evaluate these undisputed facts was unnecessary. *See, e.g.*, *Young*, 103 F.3d at 1194.

Plaintiff's other arguments concerning the terms of the written release and being compelled to somehow perjure herself are also unpersuasive. These arguments, like Plaintiff's repeated references to immaterial facts such as the parties' settlement discussions lasting "no more than an hour and fifteen minutes" rather than nearly two hours, do not alter the District Court's findings. As the District Court found, based on the parties' objective manifestations, any disputes regarding the scope of the release did not affect the finality of the agreement. (J.A. 206.) There was no clear error of these findings and the District Court did not abuse its discretion in enforcing the January 9 settlement.

In sum, Plaintiff concedes all material facts, i.e., that she made a clear and definite offer to settle, which Frontier accepted. Plaintiff's

---

[3] *E.g.*, (Op. Br. at 12 ("[Frontier's counsel] first made Plaintiff an offer of $[REDACTED], and that Plaintiff's offer of $[REDACTED], was **in fact**, a counter offer to her offer." (emphasis in original)); Op. Br. at 14 ("[Frontier's counsel] took advantage of [Plaintiff's] emotional state of mind, during the discussions, in securing a counter offer of $[REDACTED].").)

only reason for refusing to honor that agreement is her after-the-fact dissatisfaction with the terms she originally offered. This is not an adequate ground to set aside the January 9 settlement agreement. *Campbell*, 546 Fed. Appx. at 153 (finding that later dissatisfaction of the settlement amount is not grounds to void an oral settlement agreement). Therefore, this Court should affirm.

**B.    The oral settlement agreement was not contingent upon a formal release or Plaintiff's further approval of the settlement, and Plaintiff's counsel had authority to settle.**

In attempting to back out of the valid settlement agreement, Plaintiff also argues that: (1) the settlement agreement was expressly contingent upon the execution of a formal written settlement agreement, and (2) Plaintiff's counsel lacked authority to negotiate the terms of the settlement agreement on her behalf. Aside from both of these arguments being unsupported by both law and fact, Plaintiff failed to raise the latter[4] argument with the District Court below. That

---

[4] As for the former argument, Plaintiff made a perfunctory statement in her opposition to Frontier's Motion to Enforce that "no one has signed a document drafted by the other side." (J.A. 152.) Plaintiff reiterated that conclusory statement again at the hearing. (J.A. 195.) This Court has held that, if a party wishes to preserve an issue for review, that party must do more than merely intimate the argument during the

22

argument is waived and should, therefore, be disregarded on appeal. *Young*, 103 F.3d at 1194 n.8 (finding that the failure of a party to raise certain arguments against the enforceability of a settlement agreement below results in waiver of those issues on appeal).

Waiver aside, these arguments ring hollow.

First, the law is clear that an oral settlement agreement is enforceable even where the parties contemplated a later writing to memorialize it. The Virginia Supreme Court's decision in *Snyder-Falkinham v. Stockburger* is instructive. 457 S.E.2d 36, 41 (Va. 1995). In that case, the court found that a plaintiff's oral agreement to a proposed settlement was sufficient to bind her to that agreement even though the parties contemplated a later writing. Specifically, the plaintiff in that case had a change of heart after agreeing to a settlement and attempted to repudiate the agreement. *Id.* The court rejected her attempt to do so. The court found that once a party affirmatively acts to enter into a settlement agreement, having subsequent second thoughts is not good cause for setting that

proceedings before the district court. *See In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014). Because Plaintiff did not adequately develop this argument before the District Court below, it is also subject to waiver here.

23

agreement aside. *Id.* Further, the settlement was binding even though the parties contemplated a later writing memorializing the agreement because they had fully agreed upon the terms and agreed to be bound by them. *Id.*[5]

That is precisely what occurred here. Plaintiff affirmatively entered into a settlement agreement by making a counter-offer to Frontier's counsel. After Frontier's counsel accepted, Plaintiff and her counsel demonstrated their intent to be bound by the agreement by consummating it with a handshake. That Plaintiff and Frontier contemplated a formal memorialization does not vitiate their agreement.

Plaintiff's reliance on other cases for the proposition that an oral settlement agreement is always dependent upon the execution of a formal contract is misguided. In *Golding v. Floyd*, for example, the

---

[5] These same contract principles hold true in the Fourth Circuit with regard to settlements involving Title VII civil rights claims. *E.g.*, *Alexander v. Indus. of Blind*, 901 F.2d 40, 41 (4th Cir. 1990) (finding that "a refusal to enforce any oral settlement agreement is contrary to circuit precedent") (citing *Petty v. Timken Corp.*, 849 F.2d 130 (4th Cir. 1988))); *Lomax v. Am. Tel. & Tel. Co.*, 1993 U.S. App. LEXIS 4740, at *11 (4th Cir. Mar. 10, 1993) ("Written as well as oral settlement agreements may be enforced by either party, and the actual signing of the settlement document is a mere formality." (internal citations omitted)).

Virginia Supreme Court distinguished *Stockburger* on the basis that the "Settlement Agreement Memorandum" ***explicitly*** contained a provision stating that it was made "subject to and dependent upon the execution of a formal contract." 539 S.E.2d 735, 738 (Va. 2001) (emphasis added). As in the other cases Plaintiff cites, each initial settlement instrument contained an explicit term stating that settlement was contingent upon the execution of a formal settlement agreement. Therefore, these cases do nothing to undermine consistent holdings from this Court rejecting Plaintiff's position that a formal written contract is always necessary. *E.g.*, *Petty*, 849 F.2d 130 (enforcing an oral settlement agreement in a Title VII discrimination case).

In this case, the District Court correctly found that the parties never contemplated that their settlement was contingent on a written contract. During the hearing, the District Court asked Plaintiff's counsel what was said during the January 9 meeting to reflect the parties' intent that the agreement was contingent upon a written agreement. Plaintiff's counsel could not provide a direct answer. (J.A. 191.) As a result, the District Court properly found that "there was no discussion that the oral settlement was contingent upon the parties

25

executing a formal written settlement agreement." (J.A. 208.) As such, the District Court also correctly concluded that any subjective intent by Plaintiff not to be bound did not vitiate the agreement.

Second, Plaintiff's argument that her counsel lacked authority to enter into the agreement should also be rejected. Initially, her argument runs afoul of Federal Rule of Appellate Procedure 28 because Plaintiff does not develop it. *See Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 154 n.6 (4th Cir. 2012). More important, Plaintiff's contention ignores her own concession that, in addition to her counsel, she ***directly negotiated and personally consummated*** the January 9 settlement. (Op. Br. at 4 ("Mrs. Swift then made a counter offer of $[REDACTED], which [Frontier's counsel] speedily accepted." (emphasis added)).)

Moreover, this Court's general rule is that attorneys of record have authority to settle litigation on their client's behalf. *Moore*, 936 F.2d at 163-64. Thus, when a litigant voluntarily, either directly or indirectly, accepts a settlement offer through an attorney, that settlement cannot be attacked on the basis of inadequate representation. Instead, the remaining dispute is purely between the litigant and her attorney. *See Petty*, 849 F.2d at 133.

Here, Frontier's counsel shook hands with *both* Plaintiff and her counsel to consummate the agreement. (J.A. 230-34, 164.) It is undisputed that Plaintiff was copied on all correspondence following the January 9 settlement. This includes Plaintiff's counsel's request that another signature line be added to the written settlement agreement, which also included the promise that "[a]s soon as *we* receive this, *we* will do our part and return it to you." (J.A. 136-143 (emphasis added).) In fact, when Plaintiff attempted to repudiate the settlement, her counsel, not Plaintiff, communicated that breach, and based their decision to do so on his advice. (J.A. 142.) In short, Plaintiff's and her counsel's objective behavior contradicts their argument that Plaintiff's counsel did not have authority to enter into a settlement.

## II. FRONTIER'S ALLEGEDLY FRIENDLY DEMEANOR IN "SECURING THE COUNTEROFFER" IS NOT GROUNDS TO VOID THE AGREEMENT.

In a final attempt to grasp at straws,[6] Plaintiff argues that the District Court abused its discretion by not voiding the settlement

---

[6] Frontier recognizes that Plaintiff's final argument contends that the Court compelling her to sign the settlement would subject her to perjury. Plaintiff does not explain how, and her argument is a scant two sentences and seems to request an advisory opinion. As a result, Frontier is unable to respond to an argument that was never made.

27

because Frontier's counsel's "friendliness was not at all genuine, but mere orchestrated tactics to gain an unfair advantage." (Op. Br. 31.) This argument is not persuasive. Initially, this argument was not set forth in Plaintiff's brief below and is therefore waived. *Young*, 103 F.3d at 1194 n.8.

Nonetheless, Plaintiff's request that this Court apply the equitable principles required of an employer in arbitration agreements under the Federal Arbitration Act, as set forth in *Hooters of America v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999), to the negotiation of settlement agreements between private parties is misplaced. (Op. Br. 31-34.)

At the outset, Frontier notes that Plaintiff now apparently admits that Frontier "secur[ed] the counteroffer" from Plaintiff. This concession contradicts Plaintiff's prior arguments that the parties never reached a meeting of the minds. (*Compare* Op. Br. 19-30 (arguing no agreement between the parties) *with* Op. Br. 31-34 (arguing the agreement between the parties should be voided).) But more pointedly, the Federal Arbitration Act, 9 U.S.C. §§ 1-16, has no connection to this case.

Thus, because that argument runs afoul of Federal Rule of Appellate Procedure 28, it is waived.

Plaintiff's unprecedented argument to extend federal review of arbitration awards to civil settlement agreements between civil litigants has no basis in law. On the contrary, the law governing settlement agreements already exists and is well settled.

This Court's decision in *Topiwala v. Wessell* is helpful. 509 Fed. Appx. 184 (4th Cir. 2013). There, the defendants attempted to renege on a settlement, claiming that they rushed into the agreement because they had a plane to catch, only to later discover that the agreed terms were more difficult to satisfy than expected. *Id.* at 186-87. The court reiterated the familiar maxims that a settlement agreement is enforceable after the parties reach an agreement (even if not yet consummated) and that a party's second thoughts do not render the agreement unenforceable. *Id.* at 187. The *Topiwala* court held that the district court did not abuse its discretion in summarily granting the plaintiffs' motion to enforce the settlement because there was no substantial dispute regarding the agreement's existence or terms. *Id.* Thus, the court expressly rejected defendants' "catch-a-plane" and "mistake" arguments, finding that such excuses exposed their true motivations in trying to avoid the agreement. *Id.* As such, because

these excuses were "not merely comparatively, but wholly unsubstantial," the court affirmed the district court's enforcement of the settlement agreement. *Id.* at 187.

Like *Wessell*, Plaintiff's argument here that the settlement agreement should be rescinded because Frontier's counsel was nice to her is a "wholly unsubstantial" excuse to void a valid settlement agreement. *Id.* Her argument that two sophisticated attorneys were somehow conned by Frontier's counsel's cordial demeanor exposes Plaintiff's true motivation—to renege a valid settlement agreement to secure more money. (Op. Br. at 26.)

Indeed, this very case exemplifies why courts look to the parties' objective words and actions to determine whether they reached an agreement. Allowing a party to repudiate a settlement agreement by claiming a subjective belief that the parties did not reach the agreement, or because opposing counsel was cordial, would frustrate this Court's policy of strongly favoring settlement agreements. If any party wanted to disavow a valid settlement agreement, all that party would have to do is simply claim, as Plaintiff does here, that it never subjectively believed an agreement was reached or opposing counsel

30

was too nice. Therefore, the District Court correctly concluded that Plaintiff's unexpressed state of mind is immaterial. *Sengal v. Fakouri Elec. Eng'g, Inc.*, 2011 U.S. Dist. LEXIS 134820, at *7 (E.D. Va. Nov. 22, 2011).

In sum, Plaintiff's arguments to unwind the settlement agreement she readily admits the parties reached on January 9, 2015 should be rejected. The material facts are not in dispute. Plaintiff could not offer any legitimate reason to the District Court for why she refused to honor the settlement agreement or a legal justification that would permit her to do so. The District Court faithfully applied the law and properly exercised its discretion in dismissing this case pursuant to that settlement. The District Court's decision was right, and this Court should affirm.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's order dismissing the case pursuant to settlement.

Dated: June 25, 2015              Respectfully submitted,

                                  /s/ Austin W. Bartlett
                                  Austin W. Bartlett
                                  ADLER MURPHY & MCQUILLEN LLP

31

20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Telephone: (312) 345-0700
Facsimile:  (312) 345-9860
Email: abartlett@amm-law.com

- and -

Sarah E. Moffett (VA Bar No. 72208)
LeClairRyan, A Professional
Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 647-5930
Facsimile:  (703) 647-5980
Email:  sarah.moffett@leclairryan.com

**_Attorneys for Defendants-Appellees_**

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,010 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (Century Schoolbook) using Microsoft Word 2010 in 14-point font.

/s/ Austin W. Bartlett
Austin W. Bartlett
ADLER MURPHY & MCQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Telephone: (312) 345-0700
Facsimile:  (312) 345-9860
Email: abartlett@amm-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ Austin W. Bartlett
Austin W. Bartlett
ADLER MURPHY & MCQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Telephone: (312) 345-0700
Facsimile:  (312) 345-9860
Email: abartlett@amm-law.com